# GORMAN *v.* LITTLEFIELD, TRUSTEE IN BANK-RUPTCY OF A. O. BROWN & CO.

## APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 243.   Argued April 21, 22, 1913.—Decided May 26, 1913.

Where the trustee of a bankrupt broker finds in the estate certificates for shares of a particular stock legally subject to the demand of the customer for whom shares of that stock were bought by the bankrupt, the customer is entitled to the same although the certificates may not be the identical ones purchased for him. *Richardson* v. *Shaw*, 209 U. S. 365.

Where there are in the bankrupt's possession certificates for enough shares of a particular stock to satisfy the legal demand of a customer for whom shares of that stock were purchased, and no other customer can legally demand any shares of that stock, those certificates will be presumed to be the certificates kept by the bankrupt in accordance with his duty so to do to satisfy the demand of such customer.

It is the right and duty of the bankrupt, if he uses securities belonging to a customer, to use his own funds to replace such securities with others of the same kind, and in so doing he does not deplete the estate against his other creditors.

No creditor of the bankrupt can demand that the estate of the bankrupt be augmented by the wrongful conversion of property of another, or the application to the general estate of property which never rightfully belonged to the bankrupt.

There is no presumption that certificates of stock in the possession of the bankrupt were embezzled or stolen, but there is a presumption that such certificates were bought and paid for out of his own funds to replace those which he had used belonging to a customer.

175 Fed. Rep. 769, reversed.

THE facts, which involve the right of a customer of a bankrupt brokerage firm to shares of stock purchased for him by the bankrupt and fully paid for by the claimant prior to the petition, notwithstanding the certificates in

possession of the bankrupt are not the identical ones purchased, are stated in the opinion. .

*Mr. James L. Coleman*, with whom *Mr. Robert Dunlap* was on the brief, for appellant-petitioner.

*Mr. Daniel P. Hays*, with whom *Mr. Ralph Wolf* was on the brief, for appellee-respondent:

The burden was on appellant to prove that his stocks, or the proceeds thereof, came into the possession of the receiver or trustee. *First National Bank* v. *Littlefield*, 226 U. S. 110; *Peters* v. *Bain*, 133 U. S. 670.

Appellant cannot establish title to the specific shares of copper stock found after bankruptcy unless he identifies such certificates as having been purchased for him. This he has not done. Cases *supra*, and *Empire State Surety Co.* v. *Carroll County*, 194 Fed. Rep. 593; *Commissioners* v. *Strawn*, 157 Fed. Rep. 49; *City Bank* v. *Blackmore*, 75 Fed. Rep. 771; *In re Hicks,* 170 N. Y. 195; *Lowe* v. *Jones*, 192 Massachusetts, 94; *In re Berry*, 149 Fed. Rep. 176; *Thomas* v. *Taggart*, 209 U. S. 385; *In re McIntyre*, 181 Fed. Rep. 960.

See also various proceedings in *Re A. O. Brown & Co.*, 185, Fed. Rep. 766; 193 Fed. Rep. 24; *Id.* 30, and *In re Ennis*, 187 Fed. Rep. 728.

The concurrent finding of both the District Court and the Circuit Court of Appeals that appellant failed to prove that his stock, or the proceeds thereof, came into the possession of the receiver or trustee will not be disturbed in the absence of manifest error. *First Natl. Bank* v. *Littlefield*, 226 U. S. 110; *Brainerd* v. *Buck*, 184 U. S. 99; *Stuart* v. *Hayden*, 169 U. S. 1.

These findings of fact, unless reversed by this court, effectually dispose of appellant's claim.

The mere fact that there came into the possession of the receiver 350 shares of this particular stock, does

not, without further proof, entitle the appellant thereto. *In re McIntyre*, 181 Fed. Rep. 960; *In re Berry*, 149 Fed. Rep. 176; aff'd *sub nomine Thomas* v. *Taggart*, 209 U. S. 385, and other cases *supra; Empire Surety Co.* v. *Carroll County,* 194 Fed. Rep. 593.

If the decree of the court below is reversed, a new method will be added to the Bankruptcy Act for the distribution of the estate of an insolvent brokerage firm. There will be nothing left to distribute to general creditors. All of each stock coming into the possession of the receiver would be reclaimed by and distributed among the creditors of the firm owning or carrying such stock. No shares would be left in the trustee's hands for distribution among general creditors.

The authorities relied upon by appellant are not in point. *Richardson* v. *Shaw*, 209 U. S. 365, can be distinguished. See *Thomas* v. *Taggart,* 209 U. S. 385.

MR. JUSTICE DAY delivered the opinion of the court.

This case presents a controversy over 250 shares of Green Cananea Copper Company stock, which came into the possession of the trustee in bankruptcy of Albert O. Brown and others, copartners, trading under the name of A. O. Brown & Company. Appellant, James E. Gorman, claimed to be the owner of the shares of stock and instituted proceedings in the District Court to recover them. The matter was referred to a special master, who found the facts and recommended the transfer of the stock to the claimant. The District Court upon hearing ruled otherwise, and, upon appeal to the Circuit Court of Appeals, the ruling of the District Court was sustained.

The claimant for a year or more before the failure of A. O. Brown & Company was a customer dealing with one of the Chicago offices of that firm, buying stocks on margin and also paying for them in full. On or about April 14,

1908, Gorman directed the Chicago office to buy 250 shares of Green Cananea Copper stock for him. The stock was bought on the understanding that it was to be paid for in full, and at the time that the order was executed the claimant had an ample credit balance with the firm applicable on its books to the payment in full of the shares purchased. The certificates of stock were left by the claimant in the possession of the broker subject to the claimant's future order. The books of the bankrupt firm show that on April 14, 1908, they bought for the account of Gorman, 100 shares of Green Cananea Copper stock and received certificate A-335. This certificate was delivered to J. T.—————————on May 6, 1908, on account of a sale from H. Wright & Company, of Cleveland, Ohio. On April 14, 1908, the bankrupt firm bought for the claimant 50 shares of Green Cananea Copper stock and received certificate Y-11083. This certificate was on May 14, 1908, delivered to DeCoppet & Doremus, on account of balance of trade on that date. On April 14, 1908, the bankrupt firm bought for the claimant 50 shares of the same stock and received certificate B-6589. This certificate was delivered to DeCoppet & Doremus on April 16, 1908, on account of the sale of L. E. Gorton, of Detroit, Michigan. On April 14, 1908, the bankrupt firm bought for the claim- ant 50 shares of the same stock and received certificate B-6537. This certificate was delivered to Carpenter & Baggott on May 14, 1908, on account of a sale to Parson, Snyder & Company, of Cleveland, Ohio. The receiver in bankruptcy, now the trustee, came into the possession of, and still has in his possession, certificates indorsed in blank for an aggregate of 350 shares of Green Cananea Copper stock. As to this stock no claim has been filed with the receiver or trustee, although the master says the time for filing claims has expired. The certificates of stock in question, with those purchased for other clients, which were paid for in full or were purchased on margin, were

placed without discrimination in the same tin box. It was customary to take certificates to make delivery from that box, indiscriminately, unless the certificate had been transferred to the name of the customer. At no time before the failure did the claimant receive his shares of the Green Cananea Copper stock, nor did he order its sale.

Upon these facts the question is, Are these shares of stock a part of the general estate for the benefit of creditors or should they be turned over to the claimants?

In *Richardson* v. *Shaw*, 209 U. S. 365, the nature of this property was the subject of discussion and decision in this court. In that case a broker, who had been adjudicated a bankrupt, shortly before the bankruptcy and after his insolvency turned over upon demand to a customer shares of stock similar to those which had been held for the customer and for an equal number of shares. It was contended that under the circumstances this delivery of certificates amounted to a preference under the Bankruptcy Act. This court therefore had to consider the legal relation of customer and broker, in buying and holding shares of stock, and it was held that the certificates of stock were not the property itself, but merely the evidence of it, and that a certificate for the same number of shares represented precisely the same kind and value of property as another certificate for a like number of shares in the same corporation; that the return of a different certificate or the substitution of one certificate for another made no material change in the property right of the customer; that such shares were unlike distinct articles of personal property, differing in kind or value, as a horse, wagon or harness, and that stock has no earmark which distinguishes one share from another, but is like grain of a uniform quality in an elevator, one bushel being of the same kind and value as another. It was therefore concluded that the turning over of the certificates for the shares of stock belonging to the customer and

held by the broker for him did not amount to a preferential transfer of the bankrupt's property.

In the subsequent case of *Sexton v. Kessler*, 225 U. S. 90, this court, speaking of the relation of customer and broker, said (p. 97):

"When a broker agrees to carry stock for a customer he may buy stocks to fill several orders in a lump; he may increase his single purchase by stock of the same kind that he wants for himself; he may pledge the whole block thus purchased for what sum he likes, or deliver it all in satisfaction of later orders, and he may satisfy the earlier customer with any stock that he has on hand or that he buys when the time for delivery comes. Yet as he is bound to keep stock enough to satisfy his contracts, as the New York firm in this case was bound to substitute other security if it withdrew any, the customer is held to have such an interest that a delivery to him by an insolvent broker is not a preference. *Richardson v. Shaw*, 209 U. S. 365. *Markham v. Jaudon*, 41 N. Y. 235. So a depositor in a grain elevator may have a property in grain in a certain elevator although the keeper is at liberty to mix his own or other grain with the deposit and empty and refill the receptacle twenty times before making good his receipt to the depositor concerned."

It is therefore unnecessary for a customer, where shares of stock of the same kind are in the hands of a broker, being held to satisfy his claims, to be able to put his finger upon the identical certificates of stock purchased for him. It is enough that the broker has shares of the same kind which are legally subject to the demand of the customer. And in this respect the trustee in bankruptcy is in the same position as the broker. *Richardson v. Shaw, supra.*

It is said, however, that the shares in this particular case are not so identified as to come within the rule. But it does appear that at the time of bankruptcy certificates

were found in the bankrupt's possession in an amount greater than those which should have been on hand for this customer, and the significant fact is shown that no other customer claimed any right in those shares of stock. It was, as we have seen, the duty of the broker, if he sold the shares specifically purchased for the appellant, to buy others of like kind and to keep on hand subject to the order of the customer certificates sufficient for the legitimate demands upon him. If he did this, the identification of particular certificates is unimportant. Furthermore, it was the right and duty of the broker, if he sold the certificates, to use his own funds to keep the amount good, and this he could do without depleting his estate to the detriment of other creditors who had no property rights in the certificates held for particular customers. No creditor could justly demand that the estate be augmented by a wrongful conversion of the property of another in this manner or the application to the general estate of property which never rightfully belonged to the bankrupt.

The ground upon which the Circuit Court of Appeals decided the case seems to have been that the certificates were not sufficiently identified, but, as we have said, they were on hand to an amount claimed by the appellant and more, and were not claimed by any other customer. We think there should be no presumption that the stock was stolen or embezzled with intent to deprive the rightful owner of it, and when the unclaimed shares are found in the possession of the bankrupt it is only fair to accept the general presumption in favor of fair dealing and to decide, in the absence of countervailing proof, that the broker out of his funds has supplied the deficiency for the benefit of his customer, which he had a perfect right to do.

*Judgment reversed.*