HOWARD T. SAPERSTON, as Trustee in Bankruptcy of WOODWARD MOTOR COMPANY, INC., Plaintiff, *v.* NATIONAL BOND AND INVESTMENT COMPANY, Defendant.

Supreme Court, Erie County, January, 1926.

**Bankruptcy — action by trustee to recover money paid defendant within four months of bankruptcy — bankrupt stole money from defendant — bankrupt repaid part of money — plaintiff cannot recover money repaid.**

The trustee in bankruptcy cannot recover money repaid by the bankrupt within four months prior to bankruptcy, where it appears that the bankrupt stole the money from the person to whom it was repaid; that the repayment merely

effected restitution of property which had never become the property of the bankrupt; and that at the time of the restitution neither the bankrupt nor the defendant knew that the former was insolvent.

MOTION by plaintiff to set aside a verdict, and for a new trial, made after a direction of a verdict, by the court, in defendant's favor, at the close of the evidence, each party having moved for a direction of a verdict.

*Saperston, McNaughtan & Saperston*, for the plaintiff, for the motion.

*O'Grady, Orr, Morgan & Dudley* [*Harold E. Orr* of counsel], for the defendant, opposed.

NORTON, J.   The bankrupt, through its officers and agents, by means of false writings obtained from the defendant, during May and June of 1924, over $9,000.   In other words, the bankrupt stole that amount from defendant.

There is evidence that the bankrupt used the money so stolen to buy automobiles, parts and accessories, and to pay bills for merchandise and parts that went into the stock which was on hand July 9, 1924, or which had been sold and was represented by the then bills receivable of the bankrupt.

Just prior to July 9, 1924, defendant first learned of such thefts. It immediately went to the bankrupt and demanded the return of its stolen money; the bankrupt paid $1,000, and gave a bill of sale of automobiles, parts, accessories, etc., in stock, to defendant sufficient, as then estimated, to make defendant good; but from which defendant, together with the $1,000, realized between $4,000 and $5,000.

There is evidence that at the time defendant received such payment and bill of sale it believed the bankrupt to be solvent; that such knowledge as it had at that time did not disclose its insolvency.

It is true that twenty days thereafter the bankrupt filed a petition in bankruptcy, and that a day or two prior to such filing, it indorsed to defendant a check for $2,076, made by the Chevrolet Motor Company, in payment for certain parts which were transferred by the bankrupt to the defendant by the aforesaid bill of sale; which check was by the Chevrolet Motor Company made payable to the bankrupt, instead of to the defendant, the owner of such parts under such bill of sale.

The bankrupt, for many months prior to, and on July 9, 1924, was the retail sales agent of the Chevrolet Motor Company for the city of Buffalo; but on July fourteenth such agency was terminated and the bankrupt's contract therefor canceled by the Chevrolet Motor Company.

Upon evidence from which the jury have found the foregoing to be the facts, both parties moved for a direction of a verdict; and after the court had directed a verdict in favor of the defendant, the plaintiff did not ask to have the case submitted to the jury. The court, thus, as the trier of the facts, found all of the questions of fact in favor of the defendant.

Upon such facts the plaintiff, representing the general creditors of the bankrupt, asks that the verdict be set aside and a new trial granted, to the end that such general creditors may share among them the bankrupt's estate as swollen by its stealings from defendant, thus using the courts and the law to perpetuate and make effective the larcenies of the bankrupt for the benefit of its general creditors. In other words, compel the return of what the bankrupt had, prior to its insolvency, by payment and transfer of goods, restored to defendant of such stealings.

Such a result would be most shocking to a sense of justice and fairness and should only be effected if the facts clearly and fully established and found are such that the law applicable thereto requires such conclusion. The facts as found herein are not of such character. At the time of such restitution, neither the bankrupt nor the defendant knew it was insolvent.

Nor did defendant regard itself nor act nor treat itself or the bankrupt as a creditor of the bankrupt; it sought and obtained, in substance, restitution of the money stolen from it by the bankrupt, at a time when the bankrupt was still solvent. That the bankrupt shortly thereafter became insolvent does not relate back and constitute such restitution a preference. Defendant did not in procuring such restitution seek, nor did the bankrupt give or intend to give a preference. Defendant sought restitution of what was rightfully its own and the bankrupt made such restitution.

In the case of *Cunningham* v. *Brown* (265 U. S. 1) (the *Ponzi* cases), which is the last case involving the question of bankruptcy preferences before the United States Supreme Court, Chief Justice TAFT points out and emphasizes that the facts establish that the defendants were creditors of the bankrupt of the same class as all of his other creditors; that the bankrupt was insolvent and had been for a long time, when the defendants received from him the payments in question, and that the bankrupt and defendants knew of such insolvency or had knowledge of such facts as would charge them with notice thereof, and that, therefore, such payments constituted in each instance a preference.

But underlying and running through such opinion is the idea that if such other creditors had been ordinary contract creditors, that if the bankrupt had not been insolvent at the time of the

payments or transfers, or he and defendant had no knowledge or notice thereof, then such payments might properly be regarded and treated as restitutions and not as preferences.

That a repayment of stolen money does not constitute a voidable preference is the substance of the holding of the court in *McNaboe* v. *Columbian Mfg. Co.* (153 Fed. 967). In *Gorman* v. *Littlefield* (229 U. S. 19), the court, quoting from *Sexton* v. *Kessler* (225 id. 90) and citing *Markham* v. *Jaudon* (41 N. Y. 235) as authority therefor, likens the estate of a defaulter, having securities on hand, of a kind ordered and paid for by a customer, to an elevator owner intrusted with a quantity of grain, who, although he has emptied and filled his elevator twenty times after receiving such quantity of grain, is regarded and will be treated as having such grain still on hand and it will be treated as the property of the one so originally intrusting him with such quantity of grain.

In this instance defendant's stolen money was used by the bankrupt to increase or keep up its stock of merchandise and to pay for merchandise already in stock.

Applying the principle of law which the lower courts sought to apply in *Cunningham* v. *Brown* (*supra*) (the *Ponzi* cases), that where stolen property has been mingled with the thief's own property, and the thief has drawn from the general fund, it will be presumed that he drew or used first his own and not the stolen property, to the instant case, and it will be presumed that the money and stock, etc., on hand on July 9, 1924, when the bankupt made restitution to the defendant, was money stolen and merchandise bought and paid for with the money stolen by the bankrupt from defendant.

I am satisfied from the facts of the case as established by the directed verdict that the transaction in question was intended to and did effect a restitution to defendant by the bankrupt of the proceeds of the bankrupt's stealings from defendant, and was not intended to and did not effect a preference of defendant as a creditor of the bankrupt; that defendant was not a creditor of the bankrupt seeking and obtaining a preference, but was the owner of stolen property seeking and obtaining restitution.

The motion to set aside the verdict and grant a new trial is denied.