**In re HOYT et al.**
**VAN BOMEL v. IRVING TRUST CO.**

District Court, S. D. New York.
March 4, 1931.

Cravath, de Gersdorff, Swaine & Wood, of New York City (Carl W. Painter and H. Struve Hensel, both of New York City, of counsel), for receiver.

Blake & Voorhees, of New York City (Tracy S. Voorhees, of New York City, of counsel), for petitioner.

Sullivan & Cromwell, of New York City (David W. Peck, of New York City, of counsel), amici curiæ, for creditors.

COXE, District Judge.

This is an application by one Van Bomel for the reclamation of 100 shares of Hershey Chocolate stock and 100 United Gas option warrants from the receiver of Prince & Whitely. The facts have all been stipulated and are not in dispute.

Prince & Whitely were stockbrokers, with offices in New York and other large cities in the United States. On October 9, 1930, an involuntary bankruptcy petition was filed in this district against the firm and the individual partners, and Irving Trust Company was appointed receiver. This receivership is still effective, but there has been no adjudication, and no trustee has been elected.

The petitioner, Van Bomel, was a margin customer of the firm, and signed the usual

margin agreement permitting the repledge or use of securities in his account in general loans or otherwise, not only to the extent of his indebtedness, but for "a greater sum." On October 9, 1930, when the bankruptcy petition was filed, Van Bomel's account showed a debit balance of $49,220.51, and he was long the following securities, valued as of that date at $74,637.50: 100 Hershey Chocolate; 100 United Gas option warrants; 1,300 National Dairy Products; 300 Goldman Sachs; 100 Borden. On the basis of these figures the equity in the account was $25,416.99 at the time of the failure.

Subsequent to October 9, 1930, Van Bomel tendered his debit balance of $49,220.51 to the receiver and demanded his securities. This was, however, refused because the 1,300 National Dairy Products, the 300 Goldman Sachs, and the 100 Borden were not "available for delivery to the petitioner upon payment of his debit balance or otherwise."

According to the stipulation, the total value of the undeliverable securities was, at the time the petition was filed, "substantially greater than the debit balance in petitioner's account of $49,220.51." These missing securities had been pledged by the alleged bankrupts prior to the failure as security for firm loans under the authority of the margin agreement executed by the petitioner, and "by reason of such pledges and loans and other factors, the alleged bankrupts did not have on October 9, 1930, and said Receiver has not since had in its possession or control available for delivery to petitioner upon payment of his debit balance" any of such securities.

The petitioner now asks that the value of the undeliverable securities, figured as of the date of the failure, be offset against his debit balance as shown on his account, and that the 100 shares of Hershey Chocolate stock and the 100 United Gas option warrants be turned over to him without payment of any amount to the receiver.

When the bankruptcy petition was filed on October 9, 1930, the firm had in its possession unpledged 150 shares of Hershey Chocolate stock and 575 United Gas option warrants. These securities are in the hands of the receiver. Other customers of the firm are long 50 shares of Hershey Chocolate stock and 475 United Gas option warrants, so that there is now, and has been during the entire course of the receivership, sufficient of these two securities, not only to satisfy the requirements of the present petitioner, but also to take care of the demands of all other customers long the same securities.

I am satisfied that the petitioner is entitled to the 100 shares of Hershey Chocolate stock and the 100 United Gas option warrants shown on his account. These securities belong to him and are his own property, Markham v. Jaudon, 41 N. Y. 235; Skiff v. Stoddard, 63 Conn. 198, 26 A. 874, 28 A. 104, 21 L. R. A. 102; Richardson v. Shaw, 209 U. S. 365, 28 S. Ct. 512, 52 L. Ed. 835, 14 Ann. Cas. 981, and he has satisfactorily identified them according to well-recognized rules, Gorman v. Littlefield, 229 U. S. 19, 33 S. Ct. 690, 57 L. Ed. 1047; Duel v. Hollins, 241 U. S. 523, 36 S. Ct. 615, 60 L. Ed. 1143. To turn them over to the petitioner is in no sense a preference. Richardson v. Shaw, supra; Sexton v. Kessler & Co., 225 U. S. 90, 32 S. Ct. 657, 56 L. Ed. 995. And the value of the securities which the receiver is unable to deliver may properly be offset against the petitioner's debit balance with the firm. In re Hollins & Co. (D. C.) 212 F. 317, at page 321, Judge Hough allowed such an offset with respect to the Duel and Wiener reclamation claims, using the following language of the opinion: "Duel may recover 35.714 shares and Wiener 17.857 shares. Their several indebtednesses may be set off against the shares not recoverable." This ruling was assigned as error on appeal to the Circuit Court of Appeals; and, although Judge Hough's decision was reversed, there was no comment with respect to the allowance of the offset. In re Hollins (C. C. A.) 219 F. 544. The case was later carried to the Supreme Court, which reversed the Circuit Court of Appeals and reinstated Judge Hough's decision in the District Court. Duel v. Hollins, supra. A similar offset was allowed in the same bankruptcy proceeding in connection with the Crossman & Sielcken claim, In re H. B. Hollins & Co. (D. C.) 230 F. 917. And in the case of In re J. F. Pierson, Jr. & Co. (D. C.) 225 F. 889, Judge Learned Hand used the following language, in passing on the Ritter claim, at page 893 of the opinion: "Ritter's claim is a little better than the master has allowed. Having traced his stock specifically, he may recover it. However, his other stocks he does not get, and is credited with their proceeds as of July 30, 1914, a credit which is enough to wipe out his debt altogether and give him his Erie stock free and clear." Still later, in In re J. C. Wilson & Co. (D. C.) 252 F. 631, 642, Judge Mayer permitted the claimant, Godwin, to deduct the purchase price of his

converted Reading stock from his debit balance.

These cases are clear authorities in support of the petitioner's contention, and no decisions have been cited holding to the contrary. Neither is there involved on the present application any question of contribution or of conflicting equities as between class A and class B creditors. The decisions relating to those questions are, therefore, plainly inapplicable. And it appears to have been the practice in this district, ever since Duel v. Hollins, supra, to permit the offset to be made.

An attempt has been made, however, to distinguish the present case on the ground that the securities missing from the petitioner's account were not converted as in In re J. C. Wilson & Co., supra, but were disposed of through involuntary liquidation of the collateral in bank loans subsequent to bankruptcy. And it is insisted that an offset, which concededly is proper in the case of a conversion prior to bankruptcy, In re J. C. Wilson & Co., supra; In re Kardos (C. C. A.) 27 F.(2d) 690, is not permissible where the claim is for breach of a contractual obligation to carry the securities and deliver them to the customer on demand. But it can make no difference in so far as the offset is concerned whether the claim is for a technical conversion or for the violation of a contract obligation. In either event, the result to the customer is the same, namely, that he has been deprived of his securities; and his claim is as enforceable in one case as it is in the other.

If the question was merely as to the petitioner's right to file a money claim against the estate, undoubtedly there would be an allowable offset; and I can see no distinction in principle between an offset where there is a complete liquidation and "restatement" of the account and where there is only a partial liquidation, as in the present case. Section 68a of the Bankruptcy Act (11 USCA § 108 (a) provides that, in "all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid." This section "is not self-executing," but "when invoked" is "within the control of the Bankruptcy Court," and should be applied in proper cases of "mutual debts or mutual credits." Cumberland Glass Mfg. Co. v. DeWitt, 237 U. S. 447, 35 S. Ct. 636, 59 L. Ed. 1042. In the present case, the section has been invoked by the petitioner,

and I think it is proper that it should be applied. The debts are mutual, and on general principles of equity they should be offset one against the other. The cases of Boatmen's Bank v. Laws (C. C. A.) 257 F. 299; In re La Jolla Lumber & Mill Co. (D. C.) 243 F. 1004, and Levy v. Weinberg & Holman (C. C. A.) 20 F.(2d) 565, were not cases of mutual debts, and are, therefore, plainly distinguishable.

The amount of the offset to be credited against the petitioner's debit balance is the value of the missing securities as of the date of the filing of the bankruptcy petition. In re T. A. McIntyre & Co. (C. C. A.) 181 F. 955; In re J. C. Wilson & Co., supra.

The application of the petitioner to reclaim the securities mentioned in the petition is therefore granted.