### In re WOODY et al.

District Court, S. D. New York.
Jan. 4, 1932.

Graves & Yawger, of New York City (Charles S. Yawger, of New York City, of counsel), for claimant Carl E. Ward.

White & Case, of New York City (Graham D. Mattison, of New York City, of counsel), for objector Charles L. Woody, Jr.

PATTERSON, District Judge.

Following the filing of a petition in bankruptcy against it, the stock brokerage firm of Woody & Co. made a composition with creditors. The order confirming the composition sent to a special master the hearing of contested claims filed against the firm. One of these contested claims was that of Carl E. Ward. The special master has reported against the validity of the claim.

Woody & Co. were operating a pool in Stein Cosmetics stock. On May 26, 1930, Ward purchased from that firm 1,000 shares of the stock and received at the same time a repurchase agreement. His claim is based upon the repurchase agreement, the material parts of which read as follows:

"For One Dollar ($1.00) and other valuable considerations, receipt of which is hereby acknowledged, we, Messrs. Woody & Co. guarantee that we will within thirty days from May 26, 1930, purchase from you 1000 Stein Cosmetics Co. Inc. common stock @ $21 per share.

"In case you should sell this stock, the above guarantee is automatically cancelled."

The objection to the claim is based upon the contention that Woody's obligation to repurchase was conditioned upon Ward's keeping the specific certificates of stock sold and delivered to him by Woody, and that Ward did not keep them. Ward's failure to keep the identical certificates arose in this way: He was a customer as well as an employee of Horton & Co., stock brokers. The evidence is clear, however, that in purchasing this stock Ward acted for himself and not for Horton & Co. Woody duly delivered to Horton & Co. for Ward's account ten certificates in negotiable form representing the 1,000 shares. On the same day Horton & Co., which had sold for Woody's account 1,100

shares of the same stock to another broker on an entirely separate transaction, delivered Ward's 1,000 shares in execution of that sale, Woody having failed promptly to furnish Horton with the 1,100 shares sold for its account. Shortly afterward the 1,100 shares were delivered by Woody to Horton, and the latter held 1,000 of these shares for Ward, in substitution for his shares. Ward never sold his shares or authorized Horton to make any use of them in carrying out sales to others.

A day or two before the filing of the petition in bankruptcy against Woody, Horton in Ward's behalf made tender of 1,000 shares under the repurchase agreement, but Woody did not perform. The stock was sold by Ward a few days later for $6,885, a loss of $14,115, and the claim was filed for the loss.

■ The special master held that the repurchase agreement required Ward to hold the very certificates delivered to him, and that the failure to hold them terminated Woody's obligation. Accordingly he disallowed the claim. I am satisfied that the construction adopted by the special master was an unduly strict one, and that the claim should be allowed.

The agreement signed by Woody, after "guaranteeing" to purchase within thirty days after date 1,000 shares at $21 a share, provided: "In case you should sell this stock, the above guarantee is automatically cancelled." It is conceded that Ward never sold the 1,000 shares which he had purchased from Woody. All that happened was that his brokers, without his knowledge, delivered his 1,000 shares in execution of a sale which they had made to others, holding another lot of 1,000 shares for him. This was not a sale by Ward. There having been no sale by him, the clause calling for cancellation of the repurchase agreement in event of a sale never came into operation.

■■ To construe this clause as if it required the holder to keep the specific certificates in a safe deposit box is to go far beyond the language used by the parties. It is well understood both by lawyers and by brokers that shares of stock are fungible, that certificates for shares are interchangeable, that the substitution of one for another is ordinarily without legal significance. Gorman v. Littlefield, 229 U. S. 19, 33 S. Ct. 690, 57 L. Ed. 1047; Richardson v. Shaw, 209 U. S. 365, 28 S. Ct. 512, 52 L. Ed. 835, 14 Ann. Cas. 981; Caswell v. Putnam, 120 N. Y. 153, 24 N. E. 287. This being the general rule, it was incumbent on the obligors, if they wished to limit their obligation to an undertaking simply to repurchase the precise certificates sold by them, to put appropriate words to that effect in the writing. The testimony as to what Woody's employees understood the contract to mean, and also as to the earmarking of certificates in the course of operating the pool, was clearly irrelevant and cannot be considered in passing upon the rights of the parties.

The condition subsequent to the brokers' promise to repurchase, i. e., a sale of the stock by Ward, not having come to pass, their obligation remained in full force. The claim is a valid one. It is unnecessary to decide whether, in view of the circumstances under which Ward's certificates were delivered out by Horton on Woody's behalf, the latter would be liable in any event by reason of waiver or estoppel.