## In re CURTIS & SANGER.

### No. 49543.

District Court, D. Massachusetts.
April 27, 1934.

Standish Bradford and Ropes, Gray, Boyden & Perkins, all of Boston, Mass., for Harold L. Niles, creditor.

Herrick, Smith, Donald & Farley, of Boston, Mass., for bankrupts.

BREWSTER, District Judge.

The referee's certificate presents for review his order denying the petition of Harold L. Niles to reclaim 25 shares of the American Telephone & Telegraph Company stock.

Summarized, the facts are that on September 24, 1931, Niles ordered the bankrupts to buy 25 shares of American Telephone & Telegraph Company stock. This stock was purchased by the bankrupts on that date and formal confirmation was mailed to Niles on September 25. On the same day Niles requested that a certificate be issued to himself and others as cotrustees. On September 28 Niles paid the bankrupts the purchase price of the stock by check which was deposited in the bankrupts' account in the Merchants' National Bank. There was nothing to indicate that the bankrupts carried out the instructions given to them by Niles respecting the issuance of a certificate. No stock was ever identified or set aside to satisfy Niles' claim. Thirty-four shares of American Telephone & Telegraph Company stock came into the hands of the bankrupt's trustee, against which no petition for reclamation has been presented other than that involved in this case.

It should be noted at the outset that we are not concerned with marginal transactions.

█ The question now presented is whether the customer who has fully paid for the stock purchased for him by the broker can lay claim to shares of the same kind of stock in the possession of the broker's trustee in bankruptcy which is not subject to claims of other customers. If the stock has been paid for, the fact that the shares have not been transferred into the customer's name will not defeat his rights to recover the shares purchased. Gorman v. Littlefield, Trustee, 229 U. S. 19, 33 S. Ct. 690, 691, 57 L. Ed. 1047; Pilger v. Sutherland, 61 App. D. C. 84, 57 F.(2d) 604; Norman v. Bancroft Trust Co. (C. C. A.) 55 F.(2d) 91, 96; Stuart v. Sargent (Mass.) 186 N. E. 649.

From the opinion of the court in Stuart v. Sargent, supra, it appears that 125 shares of American Telephone & Telegraph Company stock, purchased by the bankrupts Curtis & Sanger for Sargent, for which he had fully paid, were reclaimed in bankruptcy proceedings. There, as in the case at bar, the brokers had been instructed to transfer them into the name of Sargent. This the brokers had failed to do. The distinguishing fact in that case was that the broker had segregated certificates for the requisite number of shares and had put them away, marked in the name of Sargent, in a safe deposit box also marked in his name. The referee evidently differentiated the claim of Niles from that of Sargent on the ground that Sargent's stock was earmarked while that of Niles was not. It is my opinion that the learned referee imparted too much significance to this omission in view of Gorman v. Littlefield, supra, which held that it was not necessary to identify the shares by particular certificates if the bankrupt broker had a sufficient number of shares of the same stock not subject to the claim of other creditors.

██ It is the duty of the bankrupt to keep on hand enough shares of stock to fulfill his contract. Gorman v. Littlefield, supra. And where there is no evidence that the shares are not the identical shares purchased, the customer is entitled to a presumption that they are the shares which the broker is holding to satisfy the order which he had executed for his customer. That the customer may establish title to such shares would seem to follow from the decisions. Lavien v. Norman, 55 F. (2d) 91, 93 (C. C. A. 1) was a case where the bankrupt brokers had purchased stock for which the customer had paid. The brokers had the stock transferred to their own account and hypothecated the shares to secure their indebtedness instead of delivering them to the customer. Judge Wilson observed, in the course of his opinion: "That shares of stocks which have been purchased through a Massachusetts broker and paid for by the purchaser and wrongfully pledged with another broker, but which have come into the possession of the trustee in bankruptcy of the Massachusetts broker, may be reclaimed from the trustee by the customer."

Lavien's stock did not come into the hands of the trustee in bankruptcy, but he was allowed to participate in the proceeds of the stock wrongfully pledged which survived liquidation "on the theory of a wrongful conversion," which necessarily presupposes title in the customer.

In Gifford v. Eastman, 251 Mass. 520, 146 N. E. 773, 774, the court said: "The stock was bought with the plaintiff's money and when purchased it became the property of the plaintiff to whom the defendant as his

740

agent was bound to make delivery on demand."

In Norman v. Bancroft Trust Co., supra, decided at the same time as Lavien v. Norman, supra, it was shown that the bank had requested the brokers to buy for it certain shares of stock. When it had received notice that the order had been executed, it credited the broker's account in the bank with the purchase price plus commission. The bank requested that certificates representing the shares be issued in the name of the brokers and indorsed in blank. Before this had been done, the bankruptcy of the brokers intervened, and the certificates were later delivered to the trustee in bankruptcy. The bank was allowed to reclaim these shares, which the brokers had purchased for it. It appeared further in that case that there was no other transaction in the same stock during the month when the purchases were made.

While the cases above considered are distinguishable on their facts from the case at bar, I am of the opinion that the distinction does not require the application of a different rule, especially in view of the following language, taken from the opinion of Judge Day in Gorman v. Littlefield, supra: "It is said, however, that the shares in this particular case are not so identified as to come within the rule. But it does appear that at the time of bankruptcy certificates were found in the bankrupt's possession in an amount greater than those which should have been on hand for this customer, and the significant fact is shown that no other customer claimed any right in those shares of stock. It was, as we have seen, the duty of the broker, if he sold the shares specifically purchased for the appellant, to buy others of like kind, and to keep on hand subject to the order of the customer certificates sufficient for the legitimate demands upon him. If he did this, the identification of particular certificates is unimportant. Furthermore, it was the right and duty of the broker, if he sold the certificates, to use his own funds to keep the amount good, and this he could do without depleting his estate to the detriment of other creditors who had no property rights in the certificates held for particular customers. No creditor could justly demand that the estate be augmented by a wrongful conversion of the property of another in this manner, or the application to the general estate of property which never rightfully belonged to the bankrupt."

In view of the foregoing, I deem it unnecessary to consider whether a preferred claim for the amount of the check paid to the bankrupt for the stock in question can be established on the theory of a constructive trust.

 The referee has found that if the petitioner is entitled to reclaim 25 shares of stock of the American Telephone & Telegraph Company, he is also entitled to a sum equal to the dividends declared upon the 25 shares from the date of purchase until the same are transferred to him. With this conclusion I agree.

The referee's order disallowing the petition for reclamation is reversed, and the reclamation petition, by which the petitioner is to receive 25 shares of stock of the American Telephone & Telegraph Company now in the possession of the trustee, together with the dividends thereon above mentioned, is granted.