William C. Hecht, J.
In March, 1954, this action was instituted by the Attorney-General of the State of New York, pursuant to article 23-A of the General Business Law (known as the “ Martin Act ”), to enjoin the defendants from engaging in fraudulent practices and for the appointment of a receiver to take possession of property derived by defendants therefrom. At the time of the institution of the action the Attorney-General obtained a temporary restraining order which was served upon the defendants, and their business was closed on March 19, 1954. By a subsequent order, dated April 23, 1954, the original order was made permanent, and by the provisions of the latter order a receiver was duly appointed.
The receiver thereafter brought on an order to show cause for instructions in connection with the distribution of the assets which came into his possession as a result of his appointment, and his motion raised several questions which resulted in the appointment of a referee to whom those questions were submitted.
The receiver requested that he be permitted to recognize certain priorities and that the order of payment should be as follows: I. Administration expenses; II. Wages — priority not to exceed $600 to each claimant for wages which had been earned within three months before March 19,1954; III. Taxes — moneys collected or withheld from employees for taxes due and owing to the United States, or any State or subdivision thereof and all other claims for taxes legally due and owing to the United States, or any State or any subdivision thereof; IY. Defrauded Custom *806 ers — Class A — those customers for whom only a portion of a specific security was found to cover their claim for that security. For that portion a claim should be allowed in this class. The balance of the claim should be placed in Defrauded Customers — Class B. V. Defrauded Customers — Class B — those customers for whom no specific security was found to cover their claim for that security. These claims, in addition to those balances referred to in IV supra, and all other claims of customers not otherwise specifically classified, are to be placed in this classification. VI. General Creditors — all other claims, not otherwise specifically classified, should be in the group of general creditors.
The receiver advanced reasons for his recommendation. As to I: Administration expenses should be paid first, pursuant to article 23-A of the General Business Law of the State of New York. As to II: The provisions of section 22 of the Debtor and Creditor Law (as amd. by L. 1950, ch. 758, § 7; L. 1952, ch. 794, § 1). As to III: Claims for taxes legally due and owing should have next priority pursuant to section 191 of title 31 of the United States Code. He requested that items I, II and III should be paid out of funds in the categories enumerated in reverse order; that the funds in one category should be exhausted before using the funds in the next category.
As to IV, V and VI, the receiver asserted that the purpose of the statute (General Business Law, art. 23-A) is to prevent fraud in the sale of securities whereby the public might be fraudulently exploited. The customers are the ones whom the statute aims to protect so that no fraud is perpetrated upon them, within the meaning and intent, and in violation of the statute. He further pointed out that customers are to be first considered and preferred after debts having a higher priority are paid.
Accordingly, he had returned, pursuant to the order of this court, all the securities of customers, which securities were registered in the name of a customer or held in safekeeping for a customer, or segregated for the account of a customer. He recommended that he should be authorized and permitted to honor all claims for a particular security in those instances where he has in his possession sufficient quantities of that security to do so.
He also requested that he be permitted not to recognize claims against Ben Guy Phillips and Dorothy Phillips, or either of them, not incurred in the conduct of B. G. Phillips & Co., on the grounds that claims of that type are not contemplated in article 23-A of the General Business Law. He requested other instruc *807 tions and directions which are not deemed pertinent to this discussion.
The referee disagrees with the manner in which the receiver intended to distribute the assets, subject, of course, to the approval of the court. He argues that while defendants here were engaged in fraudulent practices within the contemplation of the Martin Act and obtained property through such fraudulent practices, other property was obtained by the defendants in the regular course of business without taint of fraud and mingled with the property fraudulently obtained. He asserts that all of the customers were, in a larger sense, victims of the defendants’ fraudulent practices since it was the misconduct of the defendants that kept them operating and thus in a position to place all its customers in danger of its ultimate insolvency. He contends that it is also clear that the defendants are insolvent and that there are not sufficient assets to pay all claims in full. He therefore recommends to the court a method of distributing the assets of the defendant different from that originally suggested by the receiver. The referee argues that under the receiver’s plan, customers who dealt with the broker in exactly the same manner would not, upon distribution of the available assets, be treated alike.
The referee concedes that it has been expressed as a judicial principle that the purpose of article 23-A of the General Business Law is that property obtained by fraudulent purposes shall come back, as far as possible, to the persons from whom it was obtained. He notes that the receiver proposes to establish two classes for defrauded customers, as hereinbefore set forth.
He points out that the receiver proposes, where he has in possession sufficient quantities of a particular security, to honor all claims by customers for that particular security and to distribute those securities in kind to the customers, even though the certificates are not registered in the customers’ names nor specifically held in safekeeping for such customers, nor segregated for their accounts. He argues that the receiver, in making his recommendations, has relied on three principal authorities — (Gorman v. Littlefield, 229 U. S. 19; Duel v. Hollins, 241 U. S. 523; Matter of Wilson & Co., 252 P. 631).
The referee notes these cases, but maintains that the application of the rules enunciated therein operates to create inequity between customers of the stockbroker simply by reason of the accidental fact that the securities on hand at the time of the bankruptcy might have included certain stock issues and not others. He argues that dissatisfaction with the results flowing *808 from the rules set forth in Gorman v. Littlefield (supra) and Duel v. Hollins (supra) led to the inclusion in the Chandler Act of a new subdivision (e) to be added to section 60 of the Bankruptcy Act, which relates only and specifically to the bankruptcy of a stockbroker (U. S. Code, tit. 11, § 96, subd. [e], par. [4]). He contends that in effect the new subdivision rejects the principles set forth in the afore-mentioned cases with respect to equitable liens of customers upon securities of like character which have not in fact been segregated for those customers, and that it sets up three basic categories of creditors in a bankruptcy of a stockbroker.
Accordingly, the referee has recommended the order of priorities as follows :
(a) Cash customers, as defined in subdivision (e) of section 60 of the Bankruptcy Act, except as modified in his report, who are able to identify specifically their property in the hands of the receiver, in the manner described in paragraph (4) of said subdivision, are entitled to reclaim their property from the receiver ;
(b) The balance of the assets in the hands of the receiver should be liquidated and shall constitute a single and separate fund for the benefit of all other customers, subject to the following priorities:
(1) Administration expenses;
(2) Federal tax claims ;
(3) Preferred wage claims; that is, claims up to $600 earned within the three-month period preceding March 19, 1954;
(4) New York State and New York City tax claims.
He further recommends that, subject to such priorities all the customers of defendant, except cash customers who have specifically identified their property, as provided in subdivision (e), will share ratably in this fund, based on the nature of their respective equities as of March 19, 1954.
(c) General creditors. He further recommends that the receiver should not recognize claims against Ben Guy Phillips and Dorothy Phillips, or either of them, not incurred in the conduct of the business of the defendant; that March 19, 1954 shall be the controlling date in determining the nature of the equities of the customers, in accordance with the principles of subdivision (e); that where securities not registered in the name of a customer were held in safekeeping for a customer but not segregated for the account of a customer, the receiver shall not make distribution in kind, even though he may have in his possession sufficient quantities of a particular security to honor all claims for a particular security. All such securities should *809 be sold and the proceeds thereof, together with dividends collected thereon, should be placed in a single and separate fund provided for by subdivision (e); that where the receiver has not in his possession sufficient quantities of a particular security to honor all claims for that particular security, such securities should be sold and the proceeds thereof, together with dividends collected thereon, should be placed in the single and separate fund provided for by subdivision (e). He makes other recommendations which, however, need no detailed discussion since the court will adopt them.
The referee recognizes that the Federal statute is not binding upon the State courts but argues that there is no valid reason why the courts of the State should not follow the principle set forth in the Chandler Act for the distribution of the assets of a stockbroker in the hands of a Martin Act receiver.
He asserts that the distribution of the assets in a Martin Act receiver’s hands, in line with the principles set forth in the Chandler Act amendment to the Bankruptcy Law, will in fact effectuate the basic aims of the Martin Act to give the best possible protection to all customers who have been victims of the fraudulent acts of a stockbroker and do so upon the basis of equity rather than chance.
The report of the referee reveals a careful and painstaking analysis of the claims, the questions involved and the law applicable to an equitable distribution of the assets in the receiver’s hands. I am of the opinion, however, that if the referee’s recommendations with regard to priorities of customers’ claims were followed, it would give the receiver powers not authorized by the Martin Act and change established New York rules of substantive law.
It is well settled that “ a Martin Act receivership does not contemplate a liquidation for creditors of the bankrupt but for defrauded persons who establish their rights as owners of the property seized by the receiver ”. (Matter of Koch, 116 F. 2d 243, 246, cert. denied sub nom. Hirson v. Koch, 313 U. S. 565.)
The receiver is not given powers of a trustee in bankruptcy nor power over all the property of or in the hands of the defendants. His powers are strictly limited to such property as was either derived from fraudulent purposes or property which has been so commingled with property derived from fraudulent purposes that it cannot be identified in kind.
I recognize the referee’s attempt to achieve a most fair and equitable distribution of the assets in the receiver’s hands. Nor am I unmindful of the reasons for the change in the Chandler *810 Act. I have no aversion to the molding and changing- of the common law to keep pace with present-day conditions, and, as the great Chancellor Kent stated, to revise it ‘1 without reluctance, rather than to have the character of our law impaired, and the heauty and harmony of the system destroyed by the perpetuity of error.” (Woods v. Lancet, 303 N. Y. 349, 355.) However, the receiver, as has been hereinbefore noted, is acting under and by virtue of a specific statute which limits his powers, and any change such as recommended by the referee should come from the Legislature, not the courts. This is not a situation where the court abdicates its own function in a field peculiarly nonstatutory by refusing to reconsider an old and unsatisfactory court-made rule. In Wood v. Lancet (pp. 355-356, supra) the court recognized that “ Perhaps, some kinds of changes in the common law could not safely be made without the kind of factual investigation which the Legislature and not the courts, is equipped for. Other proposed changes require elaborate research and consideration of a variety of possible remedies — such questions are peculiarly appropriate for Law Revision Commission scrutiny ’ ’.
Consequently, if there are sufficient shares of stock in the hands of the receiver to meet all claims for said stock, the receiver should return the stock to the claimants, in accordance with part of the plan originally advocated by him and which the court hereby approves.
In this connection it should be noted that with reference to the claim of GL William Bailey, Mr. Justice Irving L. Levey, in an order entered on December 9,1954, directed the receiver to turn over such of the named securities as may be in his (receiver’s) possession or control and under the plan now approved by the court the receiver will carry out the provisions of the aforesaid order, which in any case he would have been required to do.
In view of the foregoing, the order of priorities shall be as follows:
I. All claims of customers for a particular security where the receiver has in his possession sufficient quantities of that security to do so;
II. Administration expenses;
III. Federal tax claims;
IV. Preferred wage claims; claims up to $600 earned within the three-month period preceding March 19, 1954;
V. New York State and New York City tax claims ';
VI. All claims of customers, for whom only a portion of a specific security was found to cover the claims for that security; to the extent of such security;
*811 VII. The balance of any claims of customers under VT; claims of customers for whom no specific security was found to cover their claims for that security; and all other claims of customers not otherwise specifically classified;
VIII. General creditors.
It should be noted that what I have directed with respect to the priority distribution of specific securities applies with equal force to claims of customers for bonus stock and said claims shall be similarly treated.
It should also be noted that in furtherance of claims for a particular security where the receiver does not have sufficient quantities of that particular stock to honor all claims therefor, the receiver is directed to sell such securities and honor the claimant’s lien for a pro rata share of the proceeds of the sale of said securities, together with all dividends collected thereon by the receiver, under class “ VI ”. The balance of the claims should be honored under category ' ‘ VII ’ ’.
For the purpose of clarity, and in order to avoid any misunderstanding as to the rights of claimants who oppose the referee’s recommendations, the disposition by the court of such claims and the claims of customers similarly situated is as follows:
David A. and Sylvia L. Stamler. The receiver is in agreement with the report of the referee that the Stamlers failed to trace and identify their alleged cash items. However, in accordance with the plan approved by the court, since there is a quantity of stock in the hands of the receiver of the type ordered by these claimants but insufficient to meet the claims of all the customers, they will share pro rata in the fund to meet such claims, as hereinbefore described under ‘ ‘ VI ’ ’ and the balance of their claims will be in category “ VII ”.
Helen S. Cohn and Dorothy Goldberg. The referee found, and the record supports him, that Helen Cohn has not sustained the burden of establishing herself as a “ cash customer ” who has ‘ ‘ specifically identified ’ ’ her property in the hands of the receiver. Since the receiver has in his hands a quantity of stock sufficient to meet the claims of all customers for such stock, the receiver is directed to turn over to them the stock which was specifically purchased for them pursuant to their order, in accordance with the original plan of the receiver as approved by the court.
Charles and Charlotte Greenwood, Herman Nagler, Sam Goldstein, Abe Nelson, Alphonse Baldarsano and May Steckel. In connection with the claims of each of these customers, since the receiver has in his possession sufficient securities to meet *812 said claims as well as any other claims heretofore made on him for similar securities, he is directed to honor said claims for the reasons hereinbefore set forth.'
Louis Gavard. The receiver points out that this claimant in effect attempts to impress a trust to the extent of $10,000 on certain funds in the bank account of the receiver or, in the alternative, to have the court determine that he has a priority to the extent of $10,000 in the liquidation by the receiver of all the assets in his hands. The record discloses that Gavard had turned over to defendants a check payable to them in the sum of $10,000 and that this check was deposited by the defendants in an account in the name of B. A. Phillips & Company at the Grace National Bank. The referee found that Gavard completely failed to trace what he claims to be his property in any bank account of B. A. Phillips & Company, and both the receiver and the referee are in agreement with respect to this claim. However, consonant with the determination hereinbefore set forth, this claim is directed to be placed in category “ VII ”.
It should be noted that in each of the instances where the referee is in accord with the original recommendation of the receiver, the court has examined the subject matter thereof and the referee’s report in that regard is adopted in all respects.
With the exception of those instances which I have specifically noted, particularly the modifications of the priorities as I have indicated, and unless otherwise inconsistent with my determination herein contained, the report of the referee is adopted as modified. Settle order accordingly.