POWERS *v.* DODGSON.

1. SALES—UNIFORM SALES LAW—BREACH OF CONTRACT.
     Under Act No. 100, Pub. Acts 1913 (3 Comp. Laws 1915, § 11832), where a present sale of wool occurs, the vendor may not claim any right of retention until the entire price was paid, though he had tendered the wool in performance of the contract, offering to deliver more than the stipulated quantity of a fine grade, that the purchaser declined to take at the agreed price, but offered to pay a reduced amount for the excess quantity.

2. DAMAGES—DELIVERY—REFUSAL.
     Upon the vendor's declining to deliver goods of which title has passed to the buyer, and disposal thereof to a third party, the measure of damages is the difference between the contract price and value of the goods, when sold to another.

Error to Barry; Smith, J. Submitted October 4, 1916. (Docket No. 27.) Decided December 21, 1916. Rehearing denied April 19, 1917.

Assumpsit by Serroll Powers against Will Dodgson for breach of a contract for the sale of wool. Judgment for plaintiff. Defendant brings error. Affirmed.

*Elmer N. Peters*, for appellant.

*Colgrove & Potter*, for appellee.

There was conflicting testimony concerning the precise terms of the parol contract which the parties made, a conflict which the jury has apparently resolved in favor of the plaintiff, appellee, and appellant, in presenting his points, assumes the contract to be as plaintiff claims it is. Defendant, appellant, had a quantity of wool, not all of it stored at the same place, for which, to plaintiff, a wool buyer, who had never seen it, he asked 26 cents a pound, finally offering it for 25¾ cents. Plaintiff said, "I am afraid there is too much fine wool in it," and defendant said, "Not over 300 pounds at the outside." Plaintiff said, "If there ain't over 300 pounds of it, I will give you 25½ cents." Defendant accepted this offer, and $100 was paid upon the purchase price. Plaintiff was to take the wool in two or three weeks. This, in substance and effect, is the bargain testified to by the plaintiff. Defendant testified that when plaintiff inquired what kind of wool it was, he told him he did not know; that a third person had bought most of it for him, and had represented that he bought only one "strictly fine bunch of wool" of 300 or 400 pounds; that there would be, besides, an occasional fleece of fine wool; there would be more than 300 pounds of fine wool. Two weeks later, they began to sack the wool, and sacked and graded some 22,000 pounds, the grading showing 2,893 pounds of fine wool. No sacking and grading was done at the other storage points. There was conversation about the quantity of fine wool found. The market price of this was less than the price for the other wool. Plaintiff declined to accept and pay for the wool at the agreed price, offering, however, to take it and pay a less price for the fine wool in excess of 300 pounds. No price for the fine wool was agreed upon,

defendant claiming that the sale was of the lot at the price already fixed. The payment of $100 was made November 28, 1914. Argument about the price of the fine wool went on, at intervals, until some time in January, perhaps in February, 1915. Defendant sent to plaintiff a check for $117.50, being for the payment on the purchase price and some item of expense attending the sacking of the wool, plaintiff refusing to accept it. In February defendant sold the wool, the price of which had considerably advanced. In his declaration plaintiff alleges that he bought from defendant 30,000 pounds of wool for 25½ cents a pound, of which not more than 300 pounds was to be fine wool; that in sacking it there was found 2,000 pounds and upwards of fine wool, and defendant refused to allow plaintiff to have the wool unless he would pay for all of it at 25½ cents a pound; and, although plaintiff was willing to pay the purchase price of the wool as agreed, defendant converted the same to his own use, to plaintiff's injury and damage. The declaration contains also the common counts in assumpsit. The jury was instructed, in substance, that if the defendant's version of the transaction was found to be true, plaintiff could not recover more than $100, plus the sum he paid out for sacking the wool and the value of the sacks, if defendant sold the sacks with the wool; that if they found plaintiff's version to be the true one, plaintiff could also recover the difference between 25½ cents per pound and what the wool was worth on the day defendant disposed of it to others. A verdict was returned for plaintiff for $1,105.97, for which sum a judgment was entered, with costs. A motion for a new trial was denied. In his brief, defendant, appellant, states his contention as follows:

"It is the claim of appellant that the contract between the plaintiff and defendant, which is the basis of plaintiff's action, was an unconditional sale of a

specific 30,000 pounds of wool in a deliverable state, warranted to contain not to exceed 300 pounds of fine wool, and that the title to the wool passed from the defendant to the plaintiff at the time of the making of the contract on the 28th day of November, 1914; that the defendant had the right to the possession of the wool until the purchase price was paid; that defendant never waived this right; that it was the duty of the defendant to deliver, and the duty of the plaintiff to receive, this wool so sold at the time and place agreed upon, which was within two or three weeks from the date of sale; that it also was the duty of plaintiff to pay for the wool upon delivery; that the identical wool sold by defendant was tendered by him to plaintiff, and that 22,388 pounds of the wool was put in plaintiff's sacks by plaintiff and persons employed by him; that plaintiff sacked this wool as the wool he bought; that he did not reject any of it; that one or two days after sacking this 22,388 pounds of fine wool he insisted upon his right to the possession of the wool, but refused to pay for it unless defendant would accept five cents a pound less than the contract price for 2,593 pounds of the wool at that time sacked and weighed; that the defendant refused to give possession of the wool unless plaintiff would pay the contract price of 25½ cents a pound; that defendant, after waiting a reasonable time for the plaintiff to receive the wool and pay the contract price, rescinded the sale, and that he had a legal right under the circumstances, as shown by the undisputed evidence, to rescind it; that the defendant was not thereafter liable to plaintiff upon the contract of sale; that the title to the wool having passed to the plaintiff, the plaintiff's remedy, in case the wool was not of the quality warranted, was to receive and pay for the wool at the contract price, and sue defendant for damages for breach of warranty; that plaintiff did not have the right to refuse to pay defendant the contract price, and upon defendant's refusal to deliver the wool until the contract price was paid, treat the contract as in force for the purpose of recovering damages for the breach of warranty and also treat the contract as rescinded for the purpose of recovering the advanced money paid."

On the other hand, the appellee says, in the brief:

"According to defendant's contention, the title of the wool at Vermontville passed from defendant to the plaintiff at the time the wool was sacked. If so, then the wool at Vermontville was the plaintiff's wool. It continued to be plaintiff's wool until it was converted by the defendant. The defendant and the plaintiff continued their negotiations for a settlement of the differences which had arisen over the surplus fine wool. The defendant insisted that the plaintiff should take it and pay the contract price of 25½ cents a pound for this wool which defendant never sold, and which plaintiff never bought. The plaintiff refused to accept this surplus fine wool, and to pay the 25½ cents a pound. He offered to take the wool except this surplus fine wool and pay the contract price. He offered to take 300 pounds of fine wool and to take all other wool that complied with the contract. He offered to take the inferior fine wool not in accordance with the contract which the defendant insisted that he should take and to pay the market price for it. These negotiations for a settlement of this dispute run over a long period of time. They were discussed in Mr. Kidder's office; they were discussed on the street; they were discussed in Dr. Vance's office; but the defendant constantly sought to avoid a settlement. The price of wool was going up. The defendant desired to repudiate the contract and to take advantage of this increase in price, and finally on January 25, 1915, the defendant contends he rescinded by tendering to plaintiff his check which plaintiff refused to accept, and that he rescinded the contract thereby. So far as the surplus fine wool is concerned which was the real cause of the dispute above the 300 pounds of fine wool which the plaintiff agreed to accept in the 30,000 pounds of wool which he bought of the defendant, there was no acceptance of it. The mere fact that the wool was sacked by the defendant and at the defendant's expense, the fact that the wool was left in the barn, and that the plaintiff agreed to pay storage charges thereon so long as the key to the barn was not delivered by defendant to the plaintiff, pending settlement, so long as plaintiff was excluded from the

possession of the property, so long as the parties were negotiating for a settlement of the dispute which had arisen between them over this surplus fine wool not sold by defendant and not bought by the plaintiff, there was no such unequivocal acceptance by the plaintiff of the surplus fine wool as to pass the title of it from defendant to the plaintiff."

OSTRANDER, J. (*after stating the facts*). Both parties testify to a present sale of wool, the precise quantity unknown. The jury has found that the quality was agreed upon, the whole to contain not more than 300 pounds of fine wool. Defendant tendered much more than 300 pounds of fine wool. The plaintiff refused to accept such a delivery, and offered to take the wool with 300 pounds of fine wool and pay for it. Defendant refused all offers made, insisting upon the agreed price for all of the wool and refusing to deliver less than all of the wool.

Under the provisions of the uniform sales act (3 Comp. Laws 1915, § 11832 *et seq.*), title to the wool passed to plaintiff November 28, 1914. It was the duty of the seller to deliver the goods and of the buyer to accept and pay for them in accordance with the terms of the contract, delivery of the goods and payment of the price being concurrent conditions; the seller being ready and willing to give possession and the buyer ready and willing to pay the price in exchange for possession. But when the seller delivers to the buyer goods he contracted to sell, mixed with goods of different description, not included in the contract, the buyer may accept the goods which are in accordance with the contract and reject the rest, or may reject the whole. There is a further provision of the act to the effect that where goods have been delivered to the buyer (though under a warranty), he cannot rescind the sale if he knew of the breach of warranty when he accepted the goods.

I think it plain that plaintiff did all that he could do to perform his contract; that title to the goods bought passed to him; that delivery did not conform to the contract; that he offered to reject goods not bought and pay for the remainder; that defendant disputed the terms of the contract he had made and refused to make delivery in accordance therewith. Defendant cannot stand in this court upon any right to retain the goods until payment had been made in accordance with the contract. He refused to deliver; was not ready and willing to deliver what he had sold. He converted what he had sold by a sale to another. The issue of fact was properly given to the jury and, under the circumstances, the measure of damages recoverable was correctly stated. Negotiations by which plaintiff sought to receive what he had bought continued almost to the date when defendant disposed of the property. The measure of damages given by the trial court was the difference between 25½ cents and what the wool was worth when defendant sold it to others.

The judgment is affirmed.

STONE, C. J., and KUHN, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.