### McDONALD *v.* DEWEY.

#### SHAFER *v.* SAME.

1. Brokers—Purchase of Bank Stock—Delivery.
   In suit by purchasers of bank stock to recover purchase price on ground of rescission and breach of contract because assessment was levied on stock after order was given defendants but before latter tendered delivery, failure of defendants to subsequently deliver to plaintiffs identical stock ordered from other brokers to fill plaintiffs' order *held,* immaterial.

2. Corporations—Certificate of Shares of Stock.
   A certificate of the same number of shares, although printed upon different paper and bearing a different number, represents precisely the same kind and value of property as does another certificate for a like number of shares of stock in the same corporation.

3. Brokers—Principal and Agent—Revocation of Agency.
   Those who order stock through stock brokers constitute latter their agents and may revoke the agency prior to time agents obligate themselves pursuant to the discharge of their duties, but not thereafter.

4. Same—Rescission—Breach of Contract—Estoppel.

Plaintiffs who ordered bank stock, through brokers who immediately entered into a binding executory contract with others to purchase same, *held*, estopped to recover purchase price on theory of rescission, or damages for breach of contract, where, following knowledge of levy of assessment on such stock plaintiffs accepted delivery of stock under protest and paid balance of purchase price, since brokers are deprived of power to rescind their purchase from their vendors.

5. Sales—Rescission—Implied Warranty—Statutes—Common Law.

Rescission based on claim of implied warranty that bank stock was free from incumbrance *held*, barred at common law and under statute by acceptance of delivery and retention of stock with full knowledge that assessment had been levied thereon (2 Comp. Laws 1929, § 9508).

6. Same—Rejection—Waiver.

Where, after rejection, buyer conducts himself toward goods in manner inconsistent with the rejection or with seller's absolute ownership buyer waives rejection.

Appeal from Wayne; Stein (Christopher E.), J., presiding. Submitted June 6, 1935. (Docket Nos. 50, 51, Calendar Nos. 38,316, 38,317.) Decided September 9, 1935.

Separate actions of assumpsit by Fred J. McDonald and Frank L. Shafer against Frederick A. Dewey and others, copartners, on contract as to purchase of bank stock. Cases consolidated for trial and appeal. Judgments for plaintiffs. Defendants appeal. Reversed.

*Jeffries & Krause,* for plaintiffs.

*Goodenough, Voorhies, Long & Ryan,* for defendants.

North, J. In each of these non-jury cases the plaintiff seeks to recover from defendant brokers

with interest thereon $3,000 paid to defendants for 100 shares of American State Bank stock. Recovery is sought both on the grounds of rescission and of breach of contract. Plaintiffs' orders for stock were placed with the brokers about noon, March 12, 1931. Defendants ordered this stock from other brokers at once and immediately reported and confirmed the purchase of the stock to Mr. Shafer who, in these transactions, was acting both for himself and as agent for Mr. McDonald. That same afternoon Shafer mailed defendants his check for $3,000 in payment of his purchase. There was also delivered to defendants a check for $1,500 in part payment of McDonald's purchase. The remaining $1,500 for the stock bought by McDonald was later paid by him to defendants. Late in the afternoon of March 12th a 100 per cent. stock assessment, $20 per share, was levied on the stock of the American State Bank. At once the market price of this stock fell to a marked degree. In the forenoon of the following day, March 13, 1931, Shafer learned that the stock purchased by defendants to fill plaintiffs' orders had not yet been delivered to defendants. Shafer thereupon notified defendants "not to complete the deal, * * * not to take delivery of the stock because * * * there had been an assessment placed on it." Plaintiffs' demand for repayment of the purchase price or return of the checks was refused by defendants. However, after taking legal advice, delivery of the purchased stock was accepted by Shafer on March 16, 1931, but "under protest." It is plaintiffs' contention that the levy of 100 per cent. assessment on the stock before delivery of the certificates released the purchaser from legal obligation to accept delivery because of the assessment having become a lien upon the stock whereas the purchaser was entitled to delivery of unincumbered

stock.  Defendants challenge the above contention
and rely upon plaintiffs' acceptance of delivery of
the stock with full knowledge of the material facts.
On the ground of rescission, plaintiffs each had
judgment in the circuit court.  Defendants have ap-
pealed.

It appears that the stock ordered by defendants
from other brokers (William L. Davis & Co.) to fill
plaintiffs' orders was not the identical stock sub-
sequently delivered to plaintiffs.  But under the
record in this case we think no significance can be
attached to this circumstance.  Defendants' office
manager testified:

"The explanation of the fact that they (stock cer-
tificates) came from Roney & Company, though we
ordered from Davis & Company to fill the plaintiffs'
orders, is that there were other transactions at the
time through other brokers and the stock was not
kept separately, not delivered to the buyer.  The
stocks are all merged and any 100 shares might be
delivered to a client, though they come from any
person who was delivering 100 shares to us.  We
may have ordered 400 or 500 shares of that stock
on that day, and any of the certificates in fulfill-
ment of those orders may have been delivered to
Mr. Shafer."

The quoted testimony outlines a course of con-
duct in handling transactions of this character
which has been approved by courts of highest stand-
ing:

"A certificate of the same number of shares, al-
though printed upon different paper and bearing a
different number, represents precisely the same kind
and value of property as does another certificate for
a like number of shares of stock in the same cor-
poration.  It is a misconception of the nature of
the certificate to say that the return of a different

certificate or the right to substitute one certificate for another is a material change in the property right held by the broker for the customer." *Richardson* v. *Shaw*, 209 U. S. 365, 378 (28 Sup. Ct. 512, 14 Ann. Cas. 981).

See, also, *Gorman* v. *Littlefield*, 229 U. S. 19 (33 Sup. Ct. 690).

Plaintiffs dealt with defendants as agents, *i. e.*, their stock brokers. Any time prior to the agents' having obligated themselves pursuant to the discharge of their duties as agents of plaintiffs, the latter might revoke their agency, but not thereafter. This record is by no means as definite as it should be on the question of defendants' having consummated a binding contract with other brokers for the purchase of stock with which to fill plaintiffs' orders prior to plaintiffs' attempted revocation of the agency. If such contract had been made, plaintiffs could not thereafter have revoked defendants' agency; but in the absence of such a contract plaintiffs might have revoked the agency. 1 Mechem on Agency (2d Ed.), § 564. However, decision herein turns upon another phase of this record.

Appellants' brief presents for review the following question:

"Where a broker acting in behalf of his client purchases stock for such client, or enters into a binding executory contract for such purchase, and before the certificates of stock representing such purchase are delivered the client refuses to accept them, but subsequently revokes such refusal, and accepts certificates which were part of the lot purchased by the broker for his various clients, but not the certificates representing the same shares as were purchased for such client, does a statement by the client that he protests relieve him from the effect of accepting the benefits of the contract?"

As noted above, plaintiffs seek to recover on the ground of rescission of their purchase of American State Bank stock, and also upon the theory of breach by defendants of their agency contracts. In each instance recovery is sought solely upon plaintiffs' assertion that they were entitled to receive, through their agents' purchase, stock that was free from liens or incumbrances; and plaintiffs contend that after this stock was assessed it was not free from liens and incumbrances. Plaintiffs cannot recover on this theory because after they were possessed of full knowledge of all the facts bearing upon this phase of the transaction they accepted delivery of the stock and thereafter retained possession and ownership thereof for more than two months prior to bringing suit. In fact, it was after such delivery of the stock and with such full knowledge that plaintiff McDonald paid the balance of $1,500 on his purchase.

We are mindful of the fact that delivery of the stock was accepted by Shafer "under protest." But nowhere in the record do the grounds or details of the protest appear. Instead, it is disclosed that prior to accepting delivery of the stock Mr. Shafer advised with his attorney. He thereafter accepted the stock under the advice of his own counsel. By having accepted delivery of the stock with full prior knowledge of the assessment theretofore made on the stock, plaintiffs are estopped from now obtaining relief on that ground. As noted in appellants' brief:

"This is a case where the act nullifies the words. * * * Assuming that defendants had the right to rescind the purchase from Davis & Co., the taking of the stock by plaintiffs deprived defendants of the power to rescind (their purchase from other brokers). * * * There is no rule in the law of

sales &ast; &ast; &ast; more generally accepted than that &ast; &ast; &ast; to the effect that a buyer cannot rescind the sale if he knew of the breach of warranty when he accepted the goods."

If, as appellees assert, there was an implied warranty that the stock was free from incumbrance, their acceptance of delivery with full knowledge and retention of the stock bars subsequent rescission.

"Where the goods have been delivered to the buyer, he cannot rescind the sale if he knew of the breach of the warranty when he accepted the goods." 2 Comp. Laws 1929, § 9508.

Not only is such the rule provided by statute, but apart from the statute it is the rule of law applicable to the facts in this case. See *Powers* v. *Dodgson*, 194 Mich. 133 (Ann. Cas. 1918 D, 422); *Michigan Portland Cement Co.* v. *General Builders Supply Co.*, 240 Mich. 701; *Dertinger* v. *Lathrup*, 251 Mich. 476; *Matchless Electric Co.* v. *Morley Bros.*, 252 Mich. 144. We quote syllabi from the last case:

"Where, after rejection, buyer conducts himself towards goods in manner inconsistent with the rejection or with seller's absolute ownership buyer waives rejection.

"Buyer's action in ordering goods returned to it after it had rejected and shipped them to seller was an act inconsistent with seller's ownership, and constituted acceptance in law."

But plaintiffs assert that in event they are not entitled to recover on the ground of rescission the "judgment can be upheld on the theory of breach of contract." This phase of plaintiffs' cases is set forth in the second count of the respective declarations. It is therein charged that there was an implied agreement and understanding between plaintiffs and these defendants that the stock would be

delivered free of "all liens and assessments;" but notwithstanding this, defendants, as agents of the respective plaintiffs, accepted and delivered to the respective plaintiffs bank stock against which an assessment had been made; "and the value thereof of each share of stock was lessened by said amount (of the assessment), contrary to the agreement entered into by these parties."

We think, for substantially the same reasons hereinbefore considered relative to rescission, that plaintiffs are estopped from recovering damages from their agents on the ground alleged. Plaintiffs make no claim of right to recover on the ground of fraud or deceit. With full knowledge of all the material facts plaintiffs accepted the stock from their agents, retained possession of it for upwards of two months, and plaintiff McDonald thereafter paid $1,500 of the purchase price to defendants. By this course of conduct plaintiffs assumed ownership of the stock; and by so doing placed defendants in a position wherein they could not assert a right of recovery from their vendor on the same ground upon which plaintiffs now seek to recover. Plaintiffs acquiesced in the consummation of the sale and purchase of this stock with complete knowledge of all the material facts; and they cannot now recover damages against the agents who acted for them on the theory of a breach of the contract of agency.

Judgment is reversed, with costs of both courts to defendants.

POTTER, C. J., and NELSON SHARPE, FEAD, WIEST, BUTZEL, and EDWARD M. SHARPE, JJ., concurred. BUSHNELL, J., did not sit.