UZAL H. McCARTER (DECEASED), FIDELITY UNION TRUST COMPANY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 69193.   Promulgated May 5, 1936.

*John A. Conlin, C. P. A.*, for the petitioner.
*S. L. Young, Esq.*, for the respondent.

OPINION.

(ON REHEARING.)

BLACK: On October 29, 1935, the Board promulgated its report in this proceeding and on November 11, 1935, petitioner filed a motion for reconsideration, which has been followed by an amended motion for reconsideration filed December 20, 1935. No decision under Rule 50 has been entered pursuant to our report promulgated October 29, 1935.

The principal ground urged by petitioner in support of its motions for reconsideration is that the stipulated facts set out in our report, 33 B. T. A. 304, show that on each occasion when petitioner's decedent made the two sales of stock in question, viz.: 2,000 shares September 4, 1929, and 10,000 shares April 28, 1930, he gave his broker specific instructions as to which stock to sell out of shares then held by the broker, and that, while the facts show that these instructions were violated in part and certain shares were delivered by the brokers which were different from those which decedent had ordered sold, nevertheless under the holding of the Supreme Court in *Helvering* v. *Rankin*, 295 U. S. 123, the gain on the sales of stock in question should have been computed by using as a basis the cost of the stock which

petitioner instructed his brokers to sell rather than using as a basis the cost of the shares represented by the certificates which were actually delivered, to the extent they did not represent the stock ordered sold. In further support of its motions for reconsideration, petitioner cites *Miller* v. *Commissioner*, 80 Fed. (2d) 219.

The gist of our report promulgated October 29, 1935, was that *Helvering* v. *Rankin, supra*, applied to transactions where the seller was dealing on margins and where identification by certificates was impossible and that the rule laid down by the Supreme Court in that case would not apply, where, as in the instant case, the stipulation showed what certificates were actually delivered in completing the sale.

In *Miller* v. *Commissioner, supra*, the Second Circuit held that *Helvering* v. *Rankin, supra*, was not to be limited to transactions on margin, but applied to the sale of shares which had been purchased outright. On this point the court said:

To be sure, the court there was dealing with the sale of corporate shares made through a broker which had been held in a marginal account with other lots of the same kind bought at different times and at different prices. But we cannot see why it should make a difference whether a broker has stock belonging to a customer in a safekeeping account or holds it as security for his advances. In each case the title is in the customer and if the broker has advanced money to purchase the stock he holds it only by way of pledge.

In the *Miller* case from which the above quotation of opinion is taken, among the stocks which the taxpayer directed his broker to sell were 200 shares of Otis Elevator stock which the taxpayer had purchased December 28, 1926. As to this 200 shares, the court said:

The order for the sale of this stock was fulfilled by the delivery of certificates Nos. 2694 and 2695 for 200 shares purchased on April 17, 1924, instead of by the delivery of certificates Nos. 8149 and 8152 issued for the stock purchased December 28, 1926, which was ordered sold. The Commissioner argued that these certificates issued for the stock purchased on December 28, 1926, alone represented that stock and neither the designation by the taxpayer of the shares he proposed to sell, nor the "First-in, First out" rule could affect the case. But the decisions of the Supreme Court in *Helvering* v. *Rankin*, 295 U. S. 123, *supra; Gormon* v. *Littlefield*, 229 U. S. 19; *Richardson* v. *Shaw*, 209 U. S. 365 and *Duel* v. *Hollins*, 241 U. S. 523, 527, indicate that a designation made at the time of sale, sufficiently identifies the stock.

The similarity of the facts of the instant case to those of the *Miller* case with reference to the 200 shares of Otis Elevator stock which the taxpayer had purchased December 28, 1926, is illustrated by a comparison of the instant case with the facts which we have quoted just above from the court's opinion. The stipulation in the instant case was quoted in full in our former report, to which ref-

erence is hereby made. The following quotation from the stipulation will suffice for present purposes:

It is stipulated and agreed that during the years 1929 and 1930 and for several years prior thereto one, John F. Sheehan, was associated with the decedent, Uzal H. McCarter, as a private secretary; that if the said John F. Sheehan were called and gave testimony as a witness in this case he would testify that Mr. McCarter gave instructions to sell on September 4, 1929 the 2,000 shares of Public Service Corporation common stock which he had purchased August 12, 1929; that said John F. Sheehan verbally, by telephone, instructed the brokers Johnson & Wood to sell such 2,000 shares that were acquired by Mr. McCarter August 12, 1929.

\*      \*      \*      \*      \*      \*      \*

It is further stipulated and agreed that the delivery clerk in the said brokerage firm of Johnson & Wood, in making delivery of certificates in connection with the sale of the 2,000 shares in question made the following delivery: 1,000 shares were delivered from certificates representing a part of the original 3,000 shares in the account as of July 29, 1929, which carried a basis to Mr. McCarter 29.05½ and 1,000 shares from certificate representing the shares purchased August 12, 1929.

\*      \*      \*      \*      \*      \*      \*

It is further stipulated and agreed that if called as a witness in this case the said John F. Sheehan would testify that the taxpayer Mr. McCarter gave instructions for the sale on April 28, 1930 of the 10,000 shares of Public Service Corporation common stock which had been purchased by him on October 2 and October 28, 1929; and that he the said John F. Sheehan verbally, by telephone, transmitted instructions to the brokerage firm of Johnson & Wood to sell the said 10,000 shares of Public Service Corporation common stock which had been acquired by Mr. McCarter through said firm on October 2 and October 28, 1929.

\*      \*      \*      \*      \*      \*      \*

It is further stipulated and agreed that the delivery clerk of Johnson & Wood in making delivery of certificates for the said sale of 10,000 shares of Public Service Corporation common stock delivered the following certificates:

    400 shares out of the August 12, 1929 purchase,

  8,800 shares out of the 10,000 bloc bought in October 1929,

    800 shares from other certificates not identifiable.

\*      \*      \*      \*      \*      \*      \*

It is further stipulated and agreed that the certificate representing the 3,000 shares of Public Service Corporation common stock acquired in 1926, the 2,000 shares acquired August 12, 1929, and the 10,000 shares acquired October, 1929, were carried in the name of Johnson & Wood or some name other than Uzal H. McCarter.

The court in the *Miller* case, after discussing the Supreme Court's decision in *Helvering* v. *Rankin,* and other Supreme Court decisions, concluded its opinion with the following holdings:

It follows from the foregoing,

(1) That where there is no designation by the taxpayer at the time of making the sale, the certificate should be treated as the proper means for identification;

(2) That a designation by instructions to the broker of the shares to be sold is controlling though the certificate delivered does not correspond with the instructions;

(3) That the "First-in, first-out" rule applies only where there is neither identification by a certificate, nor by designation of the taxpayer.

We interpret paragraph (2) of the foregoing quotation from the court's opinion to refer to cases where certificates are to be delivered by the broker from lots held by him and not to certificates to be delivered by the customer to the broker.

It is clear that, if the Second Circuit correctly states the law in paragraph (2) of the quotation, then we should grant petitioner's motion and reconsider our opinion promulgated October 29, 1935, and reach a different conclusion from that which we there reached and should sustain petitioner rather than approve the determination of respondent. After a restudy of the issue we are constrained to adopt the court's holding in the *Miller* case and follow it. Accordingly, we grant petitioner's motion for reconsideration and modify our opinion promulgated October 29, 1935, by sustaining petitioner on issue (2) therein dealt with. Cf. *Robert E. Ford*, 33 B. T. A. 1229 and *James W. Arrott, Jr.*, 34 B. T. A. 133.

We think it is well to point out, however, that the court in the *Miller* case did not question the correctness of those Board and court cases where it has been held that mere intention to sell shares different from those actually delivered does not control. On that point the court said:

It is unnecessary for us to express any opinion as to the rule in such circumstances. We only hold that where there is a designation such as was found sufficient in *Helvering* v. *Rankin*, 295 U. S. 123, *supra*, it can make no difference whether the stock is held on margin or not.

It should also be pointed out, we think, that the Supreme Court in *Helvering* v. *Rankin, supra*, held that the facts as found by the Board of Tax Appeals did not show that the decedent Turner had instructed his brokers to hold the 1,200 shares of United Gas Improvement stock first purchased and to sell the shares later purchased. The Supreme Court held that the court below was in error in giving that sort of construction to our findings of fact.

After the decision of the Supreme Court the case was remanded to the Board by the Third Circuit for further hearing and findings with respect to what, if any, shares were designated to the broker as those to be sold or those to be held. On rehearing (*James L. Rankin, Executor*, 33 B. T. A. 761), we found that in 1928 the decedent was carrying in a margin account with his broker 2,500 shares of a public utility stock, some of which he had owned for more than two years. He gave orders to his broker to sell 1,300 shares without designating the securities to be sold as those purchased on a particular date or particular price. Upon these facts we held that the Commissioner correctly applied the "first in,

first out" rule and that the securities sold must be deemed to be those first purchased.

We mention these facts connected with our ultimate holding in the *Rankin* case made subsequent to the Supreme Court's decision because we want to make it clear that in granting petitioner's motion for reconsideration in the instant case we are doing so because the evidence shows that petitioner did designate to his brokers the particular stock which he desired sold, and that designation should be given effect.

At the same time we do not want to be understood as questioning the correctness of those Board and court decisions which hold that mere intention of a taxpayer to sell certain stocks purchased at a given date and a given price, not accompanied by definite instructions to that effect, is not sufficient to make inapplicable the "first in, first out" rule. Cf. *George Vawter*, 31 B. T. A. 884; affd., 83 Fed. (2d) 11.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MURDOCK, dissenting: I think that where the shares sold can be identified by a certificate they should take the basis applicable to the shares represented by that particular certificate. I do not agree with the prevailing opinion in so far as it holds, following the decision of the Second Circuit Court of Appeals in *Miller* v. *Commissioner*, 80 Fed. (2d) 219, that identification by designation to one's broker of a particular lot of stock to be sold is controlling even though it appears that the broker actually delivered stock certificates which are identified as those received in the purchase of some other lot. McCarter designated to his broker the shares to be sold. According to the stipulation the broker might have delivered proper certificates to carry out, at least in part, the instructions of his principal. But, instead, he actually delivered certificates which can be identified with some lot other than that which McCarter intended to sell. McCarter ratified his agent's action by allowing it to stand. His gain or loss must be measured by the basis applicable to the property which he actually sold, rather than by applying the basis of the stock which he merely intended to sell. *McGinley Corporation* v. *Commissioner*, 82 Fed. (2d) 56, affirming 31 B. T. A. 266. The first in, first out rule is in no way involved whenever the shares sold can be identified in some way.

The Supreme Court, in *Helvering* v. *Rankin*, 295 U. S. 124, said:

The fallacy * * * lies in the assumption that shares of stock can be identified only through stock certificates. It is true that certificates provide

the ordinary means of identification. But it is not true that they are the only possible means.

That was a case in which identification by certificates was impossible. The Court held that shares sold might be sufficiently identified by designation to the broker to make inapplicable the "first in, first out" rule. I do not infer from what the Supreme Court said in that case that identification by designation is to take precedence over identification by certificates. Indeed, I think the opposite inference could be more reasonably drawn. With all due respect to the Second Circuit Court of Appeals, I do not agree with its decision in the *Miller* case. Furthermore, the three rules laid down by the Circuit Court in that case, apparently as all-inclusive rules, conflict within themselves. Suppose a taxpayer who had purchased several equal lots of one kind of stock at different times and at different prices had received for the lot first purchased certificate A, for the next lot purchased certificate B, and so forth; he instructs his broker to sell the second lot of stock which he purchased; and the broker delivers certificate C instead of certificate B. Rule 2 of the *Miller* case would require that the basis applicable to the second lot of stock purchased be used. The next year the taxpayer directs his broker to sell a like number of shares but does not designate the lot. The broker this time delivers certificate B. Rule 1 of the *Miller* case would apply and, again, the basis to be used would be the cost of the second lot purchased. Obviously the same basis could not be used twice. No such difficulty as this will arise if the Commissioner is permitted to use the rules which he has always used, except as now modified by the *Rankin* decision; that is, where there is no designation and no other means of identification, he applies the first in, first out rule; in cases where there is identification by certificates, he uses that means of identification; and, finally, in cases where there is identification by designation of shares otherwise not identifiable, then that method of identification must be used.

McMAHON, SEAWELL, LEECH, and TURNER agree with this dissent.