JAMES E. DAVIDSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EDITH L. DAVIDSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 61741, 72904, 72905. Promulgated May 8, 1936.

*Edward J. Svoboda, Esq.*, and *J. A. C. Kennedy, Esq.*, for the petitioners.

*E. C. Algire, Esq.*, for the respondent.

560

561

## OPINION.

SMITH: The petitioners contend that the respondent has erroneously applied the first in, first out rule in computing their gains upon the above described sales of stock and that in each of the transactions involved the shares of stock sold were identified by their instructions to the broker to sell certain specified shares.

By amendments to his answers duly filed in each of the proceedings the respondent admits error in applying the first in, first out rule to the 400 shares of the American Gas & Electric Co. stock sold by Edith L. Davidson in 1929 and avers that such shares were identified by the certificates which the petitioner delivered to the broker in completion of the sale as those acquired by stock dividend, with a stipulated cost of $27.50 per share.

The respondent further avers that if the rule of first in, first out is held not applicable to the gains on the sale of certain of the shares of stock sold in 1928 and 1929 such gains are not taxable as capital net gains, as they were treated in the computation of the deficiencies herein, but are taxable as ordinary gains at the normal rate.

The respondent further avers in the amendment to his answer filed in Docket No. 72905 that, due to error in the computation of the deficiency therein asserted against Edith L. Davidson, capital net gains were understated in the amount of $22,660.79.

For reasons hereinafter discussed we have found that the first in, first out rule is not applicable to any of the transactions involved in these proceedings, since in each transaction the shares sold were sufficiently identified. This ruling, however, does not dispose of the proceedings. We must still determine what shares were sold in each transaction and the amount of the profit or loss thereon.

The several transactions will be discussed in the order indicated in the above findings of fact.

*National Power & Light Co. transactions of James E. Davidson in 1928.*

As to the sale of the several lots of National Power & Light Co. shares in 1928, we think that there was an identification by the peti-

tioner of all the shares sold and that the first in, first out rule is therefore inapplicable. The Commissioner's regulations, article 58 of Regulations 74, provide that this rule is to be applied only when the identity of the lots sold can not be determined. See *Helvering* v. *Rankin*, 295 U. S. 123. In each of these sales the shares which the petitioner instructed the broker to sell had been bought and paid for by the petitioner and, with the exception of the 100 shares sold on September 24, 1928, the certificates for the shares had been issued to him. In each instance the petitioner instructed his broker to sell certain shares which he clearly identified by certificate numbers, and afterwards he delivered the shares so identified to the broker where they were not already in the broker's possession.

The respondent makes the argument that the evidence does not show that the broker actually sold the shares which the petitioner instructed him to sell or delivered to him for sale and that in fact the shares sold by the broker were all kept in "street" names and were not susceptible of identification. That is immaterial, we think. It is not identification by the broker, but the owner and seller of the shares, that is required. In *Helvering* v. *Rankin, supra*, the Court said:

> * * * It is true that certificates provide the ordinary means of identification. But it is not true that they are the only possible means. Compare *Richardson* v. *Shaw*, 209 U. S. 365; 28 S. Ct. 512, 52 L. Ed. 835, 14 Ann. Cas. 981; *Gorman* v. *Littlefield*, 229 U. S. 19; 33 S. Ct. 690, 57 L. Ed. 1047; *Duel* v. *Hollins*, 241 U. S. 523, 36 S. Ct. 615, 60 L. Ed. 1143. Particularly is this so when, as here, the thing to be established is the allocation of lots sold to lots purchased at different dates and different prices. The required identification is satisfied, if the margin trader has, through his broker, designated the securities to be sold as those purchased on a particular date and at a particular price. It is only when such a designation was not made at the time of the sale, or is not shown, that the "First-in, first-out" rule is to be applied.

The petitioner's instructions to the broker to sell certain specified shares and the subsequent delivery to the broker of certificates for the shares specified sufficiently identifies the shares sold.

*National Power & Light Co. transactions of James E. Davidson in 1929.*

As to the petitioner's 1929 transactions in the National Power & Light Co. stock a different situation is found. The first four sales in that year, 500 shares sold January 3, 200 shares sold January 22, 1,000 shares sold January 28, and 600 shares sold February 16, were all made through the petitioner's trading account with the broker, which was "long" at the time of the sales for the number of shares sold. No certificates for the shares sold had ever been issued to the petitioner. The shares were carried by the broker in "street" names and were not earmarked. In each instance the petitioner instructed

the broker to sell certain shares purchased on a specified date. Under the decision of the Supreme Court in *Helvering* v. *Rankin, supra*, that was a sufficient identification of the shares sold. Apparently, the transactions in *Helvering* v. *Rankin, supra*, were conducted in substantially the same manner as the transactions here, since in both instances the shares sold had not been issued in the name of the customer or earmarked by the broker, but were held in "street" names.

In each of the two remaining sales in 1929, 500 shares sold June 19 and 500 sold July 1, the petitioner instructed the broker to sell certain shares represented by certificates which had been issued to him and were then being held by the bank as collateral on a loan. The petitioner expected to get these identical certificates from the bank and deliver them to the broker in completion of the sales, just as he had done in the 1928 sales, but through a mistake on the part of the bank other certificates, representing shares acquired at an earlier date, were delivered to the broker. In those circumstances, we think that the shares delivered to the broker were the shares actually sold by the petitioner.

In *Miller* v. *Commissioner*, 80 Fed. (2d) 219, the rule pronounced in *Helvering* v. *Rankin, supra*, was held to apply to transactions other than those conducted by a "margin trader." The facts there were that the broker, who had in his possession a number of shares of stock which the taxpayer had purchased at different times and for different prices, was instructed to sell a certain number of shares from a specified lot, but instead sold and delivered to the purchaser shares from a different lot. The court held that the taxpayer's instructions to the broker to sell certain of the shares identified those shares as the ones sold, notwithstanding that the broker delivered other shares to the customer. In concluding its opinion, the court stated the three following rules:

> * * * (1) that where there is no designation by the taxpayer at the time of making the sale, the certificate should be treated as the proper means for identification; (2) that a designation by instructions to the broker of the shares to be sold is controlling though the certificate delivered does not correspond with the instructions; (3) that the "First-in, first-out" rule applies only where there is neither identification by a certificate, nor by designation of the taxpayer.

In *Estate of Uzal H. McCarter*, 34 B. T. A. 535, the Board followed *Miller* v. *Commissioner, supra*, with the qualification, however, that clause (2) of the above quotation from the court's opinion in that case should be construed to mean that a designation by instructions to the broker is controlling though the certificate delivered *by the broker* does not correspond with the instructions. Where the shares are already in the broker's possession there is nothing more for the seller to do after he instructs the broker to sell certain of those shares.

Ordinarily, too, it is of no consequence to the broker or to the customer which shares are delivered by the broker. But as long as the petitioner has possession of the shares he is free to exercise his own choice and deliver whatever shares he may choose to in conclusion of the sale. In the instant case, for instance, the petitioner after instructing the broker to sell certain shares was free to change his mind about what shares he would dispose of and to deliver certificates for other shares. See also *Horner* v. *Commissioner*, 72 Fed. (2d) 407, affirming 28 B. T. A. 360; *Helen V. Kelchner*, 31 B. T. A. 262; *George Vawter*, 31 B. T. A. 884; affd., 83 Fed. (2d) 11. There is no suggestion in the Court's opinion in *Helvering* v. *Rankin*, *supra*, that the seller's instructions to the broker to sell certain shares would have prevailed as a means of identification over the fact of the delivery to the broker of certificates for other shares, nor was this question presented by the facts in *Miller* v. *Commissioner*, *supra*. In this case the delivery of the certificates by the petitioner or by the bank as his agent, we think, definitely identified the shares sold. The brokers sold the shares of stock represented by the certificates of indebtedness delivered—not those represented by some other certificates.

*General Electric Co. stock transactions of James E. Davidson in 1929.*

The petitioner had only one completed transaction in General Electric Co. stock in 1929, involving the purchase of 100 shares on February 19 and the sale of those shares on March 26. The material facts with respect to the transaction are identical with those relating to the purchase and sale of the several lots of National Power & Light Co. stock in 1928. The petitioner received delivery of certificates for the shares purchased, deposited them with the bank as collateral on a loan, instructed the broker to sell those specific shares, and when the sale was made delivered the identical certificates to the broker in completion of the sale. The purchase price of the 100 shares was $22,705, the sale price $22,791, and the profit $86.

*American Gas & Electric Co. stock transactions of Edith L. Davidson in 1929.*

The questions raised with respect to the transactions of Edith L. Davidson in American Gas & Electric Co. stock in 1929 have also been answered in our foregoing discussion of the sales of National Power & Light Co. shares by the petitioner, James E. Davidson, in 1929. There, other shares than those which the broker had been instructed to sell were delivered to him through a mistake on the part of the bank acting as agent for the petitioner. Here, other shares than those which the broker had been instructed to sell were delivered to him by the seller intentionally because she was unable to get possession of the shares which she had instructed the broker to

sell. As to the identification of the shares sold there is no basis for a distinction in these transactions and, for the reasons already stated, we hold that the shares sold were the shares actually delivered to the broker and not in part other shares which the seller instructed the broker to sell but did not deliver. We can not sustain the petitioner's contention "that the delivery of a certificate other than the share representing that particular lot [which the broker was instructed to sell] because of inability to obtain the identical certificate from the bank did not alter the transaction and that it still remained the sale of that specific lot."

With respect to the net capital gain question raised by the respondent in the amendments to his answers, it can be readily ascertained from the above stated facts whether the different lots of shares of stock sold by the petitioners in 1928 and 1929 had been held by them for a period of two years or more and therefore constituted capital assets within the meaning of section 101 of the Revenue Act of 1928. Where the shares sold had been held for less than two years the gains derived from such sales were not capital net gains, but were ordinary income taxable as such. Pursuant to the amended answers filed by the respondent the necessary adjustments in petitioners' tax liabilities will be reflected in the Rule 50 computations.

The further averment contained in respondent's amendment to his answer filed in Docket No. 72905 that Edith L. Davidson's net capital gains have been understated by the amount of $22,660.79 due to an error in the computation of the deficiency is supported by the evidence. The error appears on the face of respondent's Exhibit C. Adjustment in respect of this error likewise will be made in the Rule 50 computation.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

MURDOCK, concurring: The author of the prevailing opinion attempts to distinguish the present case from the *Miller* and *McCarter* cases on the ground that in the latter cases the delivery of the wrong certificate was made by the taxpayer's broker, while in the present case the wrong delivery was made either by the taxpayer himself to the broker or by a bank to the broker. I do not agree that the difference in the facts is a sound basis for distinguishing the cases. A broker, just like a bank, is merely the agent of the seller, and where it appears, as it did in the *Miller* and *McCarter* cases, that the certificate actually delivered was identifiable as that pertaining to a different lot of stock from the one which the taxpayer designated for sale, there is just as good reason for holding the seller to the basis applicable to the shares represented by the certificate actually

delivered as there is in the present case. I agree with the result reached in the present case because I think that identification by certificates is a better method of identification than identification by designation to the broker. See *William W. Miller*, 31 B. T. A. 192, and my dissent in *Estate of Uzal H. McCarter*, 34 B. T. A. 535.

McMahon and Turner agree with the above.

---

Arundell, dissenting: In the case of *Estate of Uzal H. McCarter*, 34 B. T. A. 535, we definitely held that we would follow the rule laid down by the Second Circuit in *Miller* v. *Commissioner*, 80 Fed. (2d) 219, to the effect that a designation to the broker of the shares to be sold is controlling although the certificate delivered does not correspond with the instructions given. I think we depart from that ruling in the instant case when we hold that the mistaken delivery by the banker of certain certificates shall prevail as an identification of what was intended to be sold over the very definite instructions of the owner to the contrary. The two rulings can not be reconciled. We should adhere to the rule announced in *Miller*, *supra*.

Van Fossan, Mellott, and Arnold agree with this dissent.